2015 COA 152

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Calvin Richard RILEY, Defendant–
Appellant.**

**Court of Appeals No. 12CA1858**

Colorado Court of Appeals,
Div. I.

Prior Opinion Announced June 18, 2015,
WITHDRAWN Petition for
Rehearing GRANTED

Announced October 22, 2015

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Chelsea E. Mowrer, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE BERGER

¶ 1 Defendant, Calvin Richard Riley, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempt to influence a public servant, tampering with physical evidence, and second degree forgery.

¶ 2 Defendant argues that (1) the trial court's elemental jury instruction on second degree forgery resulted in a constructive amendment of the information; (2) the court erred in not defining, in its instructions on attempt to influence a public servant, the term "attempt" by reference to the criminal attempt statute (an issue of first impression), and in not defining "official proceeding" in its instructions on tampering with physical evidence; and (3) the court erred in allowing the jury unfettered access to an audio recording of an interview between defendant's ex-wife and the prosecutor.

¶ 3 We reverse defendant's second degree forgery conviction and remand the case for a new trial on that count. We affirm his convictions for attempt to influence a public servant and tampering with physical evidence.

I. Relevant Facts and Procedural History

¶ 4 The People charged defendant with third degree assault and harassment for allegedly attacking his ex-wife in July 2006. After the charges were filed, defendant gave his attorney a receipt from a hotel in Kansas that purportedly showed that defendant was not in Colorado on the dates of the charged offenses. Defendant's attorney gave the hotel receipt to the prosecutor at a pretrial conference in an attempt to persuade the prosecutor to dismiss the charges.

¶ 5 The prosecutor examined the hotel receipt and concluded that it had been altered because the arrival and departure dates listed in the top part of the receipt did not match the arrival and departure dates listed in the bottom part. Further investigation revealed that the hotel's records showed that defendant had stayed there in 2007, but there was no record of defendant staying there in 2006.

¶ 6 Based on the altered hotel receipt, the People charged defendant with attempt to influence a public servant in violation of section 18–8–306, C.R.S. 2015, tampering with physical evidence in violation of section 18–8–610(1)(b), C.R.S. 2015, and second degree forgery in violation of section 18–5–104, C.R.S. 2015. The trial court held a consolidated jury trial on all of the charges.

¶ 7 Defendant testified at trial. He admitted that he had altered the hotel receipt, but he contended that he had done so to show his attorney that he took a trip to the same location each year. He testified that he purposefully left some of the 2007 dates on the receipt when he changed the others to 2006 dates in order to show, on one piece of paper, the pattern of his annual trips. Defendant denied to the jury that he submitted the document with the intention that it be introduced into evidence or affect anyone's decisions about the charges.

¶ 8 The jury convicted defendant of attempt to influence a public servant, tampering with physical evidence, and second degree forgery, but it acquitted him of third degree assault and harassment. The trial court sentenced defendant to concurrent prison sentences of two years for attempt to influence a public servant and one year for tampering with physical evidence. The court also sentenced defendant to six months in jail for second degree forgery, to be served in prison concurrently with the sentences on the other two counts.

II. The Trial Court's Constructive Amendment of the Information Requires Reversal of Defendant's Second Degree Forgery Conviction

¶ 9 Defendant argues that the trial court erred when it instructed the jury on the uncharged offense of felony forgery under section 18–5–102, C.R.S. 2015, rather than the charged offense of second degree forgery (a misdemeanor) under section 18–5–104. We agree.

¶ 10 "The United States and Colorado Constitutions guarantee a defendant the fundamental right to be notified of the charges made against him." *People v. Madden*, 111 P.3d 452, 455 (Colo. 2005). "[A] defendant cannot be required to answer a charge not contained in the information" because "the notice requirement lies at the foundation of the due process of law." *Id.*; *see also People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996).

¶ 11 A constructive amendment is a variance between the charge contained in the information and the charge of which a defen-

dant is convicted that "changes an essential element of the charged offense and thereby alters the substance of the [information]." *Rodriguez*, 914 P.2d at 257. Constructive amendments of an information are constitutionally prohibited because they "effectively subject a defendant to the risk of conviction for an offense that was not originally charged in the [information]." *Id.* (internal quotation marks omitted). A constructive amendment occurs when a defendant "is charged with one crime and the jury is instructed on the elements of another." *People v. Jefferson*, 934 P.2d 870, 872 (Colo. App. 1996).

¶ 12 Defendant was charged with conduct prohibited by one statute, section 18–5–104, and a judgment of conviction was entered under section 18–5–104, but he was convicted by the jury of conduct prohibited by another statute, section 18–5–102. *See Skidmore v. People*, 154 Colo. 363, 367, 390 P.2d 944, 946 (1964).

¶ 13 Under section 18–5–104, "[a] person commits second degree forgery if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument of a kind *not described in section 18–5–102*." § 18–5–104(1) (emphasis added). As relevant here, section 18–5–102 provides that a person commits felony forgery if he or she "falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed ... [an] instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." § 18–5–102(1)(c).

¶ 14 The information charged defendant with second degree forgery "in violation of section 18–5–104." However, the jury instructions provided that the elements of the crime of second degree forgery included that defendant "falsely made or completed or altered or uttered a written instrument ... which was purported to be, or which was calculated to become or to represent if completed an instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." By omitting the term "not" before the phrase "was purported to be ... an instrument which does or may ... affect a legal right,

interest, obligation, or status," the court mistakenly instructed the jury on the elements of felony forgery under section 18–5–102, rather than second degree forgery under section 18–5–104.

¶ 15 The trial court's instruction thus constituted a constructive amendment of the information because it changed an essential element of the charged offense and allowed the jury to convict defendant of an uncharged crime. *See People v. Petschow*, 119 P.3d 495, 504 (Colo. App. 2004); *Jefferson*, 934 P.2d at 872. Because it is constitutionally prohibited to convict a defendant of a charge not contained in the information, defendant's conviction for second degree forgery must be reversed. *See Madden*, 111 P.3d at 455; *Rodriguez*, 914 P.2d at 257; *Skidmore*, 154 Colo. at 367, 390 P.2d at 945–46; *see also People in Interest of H.W., III*, 226 P.3d 1134, 1137 (Colo. App. 2009) (Because "constructive amendments effectively subject a defendant to the risk of conviction for an offense that was not originally charged" in the information, "constructive amendments are per se reversible error."); *People v. Pahl*, 169 P.3d 169, 177 (Colo. App. 2006) (same).

¶ 16 We reject the People's argument that reversal is not required because the jury necessarily found that defendant committed second degree forgery when it convicted him pursuant to the instructions on the greater offense of felony forgery. The People argue that because the jury found defendant guilty under the more stringent test for felony forgery, it necessarily found that he committed the lesser offense of second degree forgery. However, second degree forgery is not a lesser included offense of felony forgery. A lesser offense is included if "proof of the facts establishing the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense." *H.W., III*, 226 P.3d at 1138 (internal quotation marks omitted). The jury's finding that the elements of felony forgery were met precludes a finding that the elements of second degree forgery were met because if the written instrument at issue was the kind described in section 18–5–102 (felony forgery), it necessarily could not also be "of a

kind *not described in section 18–5–102."* § 18–5–104(1) (emphasis added).

¶ 17 Accordingly, we reverse defendant's conviction for second degree forgery and remand the case for a new trial on that count.

¶ 18 Defendant argues that, under *H.W., III,* 226 P.3d at 1138–40, he cannot be retried for second degree forgery. We disagree. In *H.W., III,* a division of this court held that because the prosecution did not present any evidence on the offense charged but rather presented evidence on an offense that was not charged, the defendant's conviction must be reversed. *Id.* at 1137–38. Defendant emphasizes the division's conclusion that because "the prosecution proved an offense it did not charge [and] charged an offense it did not prove," the defendant could not be retried on the charged offense. *Id.* at 1140. Defendant argues that here the prosecution also presented evidence of an offense it did not charge—felony forgery—and charged an offense it did not prove—second degree forgery—and therefore we must remand the case with directions to enter a judgment of acquittal for second degree forgery.

¶ 19 However, the circumstances of *H.W., III,* are distinguishable. In that case, the division concluded that the proof the prosecution provided at trial would not sustain a conviction of the charged offense, and therefore double jeopardy "prevented the prosecution from availing itself of a second opportunity to try the [defendant] on that charge." *Id.* at 1138–39.

¶ 20 In this case, the prosecution did prove second degree felony: the evidence presented at trial would have been sufficient to sustain a conviction on second degree felony, had the jury been properly instructed on that charge. Because double jeopardy prohibits retrial only if the evidence is insufficient to support the conviction, *People v. Lybarger,* 700 P.2d 910, 916 (Colo. 1985), defendant constitutionally may be retried for second degree felony under the circumstances of this case.[1]

---

1. Other cases from this court similarly have remanded for retrial on the original charge when a conviction is reversed because of a constructive amendment. *See People v. Weinreich,* 98 P.3d 920, 922–24 (Colo. App. 2004); *People v. Madden,*

## III. The Trial Court's Decision Not to Define "Attempt" and "Official Proceeding" for the Jury Does Not Require Reversal

¶ 21 We reject defendant's argument that because the trial court did not provide the jury with instructions defining the terms "attempt" and "official proceeding," his convictions for, respectively, attempt to influence a public servant and tampering with physical evidence must be reversed.

¶ 22 "A trial court has a duty to instruct the jury correctly on the law applicable to the case." *Pahl,* 169 P.3d at 183. We review de novo whether the jury instructions as a whole accurately informed the jury of the governing law. *People v. Lucas,* 232 P.3d 155, 162 (Colo. App. 2009). However, the trial court has discretion to determine whether additional instructions which properly state the law should be given to the jury. *People v. Chavez,* 190 P.3d 760, 769 (Colo. App. 2007). The court abuses its discretion only "when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *People v. Orozco,* 210 P.3d 472, 475 (Colo. App. 2009).

¶ 23 The trial court must instruct the jury on the technical or particular definition of an element of an offense if the element constitutes a term that has acquired a technical or particular meaning, whether by legislative definition or otherwise. *See Griego v. People,* 19 P.3d 1, 7 (Colo. 2001).

### A. "Attempt"

¶ 24 The trial court instructed the jury on the elements of attempt to influence a public servant, which included the element that defendant "attempted to influence a public servant, by means of deceit, with the intent to alter or affect the public servant's decision and/or action concerning any matter, which was to be considered or performed by her as a member of the DA's office." Defense coun-

---

87 P.3d 153, 156–57 (Colo. App. 2003), *rev'd on other grounds,* 111 P.3d 452 (Colo. 2005); *see also People v. Weeks,* 2015 COA 77, ¶¶ 52–53, 369 P.3d 699 (explaining that a constructive amendment usually entitles a defendant to a new trial).

sel requested an instruction defining "attempt." The trial court refused to give a separate instruction based on the definition of criminal attempt contained in section 18–2–101, C.R.S. 2015:

> I don't know that we need a separate attempt instruction for [section] 18–2–101, which defines attempt when it is an attempt to commit an otherwise freestanding crime. . . . The attempt itself is the commission of the offense under attempt to influence a public servant. . . . So I'm not going to require an additional definition of attempt to incorporate [section] 18–2–101 into it when there is no other crime except attempt to influence a public servant.

Defendant argues on appeal that this decision was erroneous because attempt is defined by section 18–2–101 and thus carries a particular legal meaning.

 ¶ 25 We disagree with defendant that we should review this alleged error for constitutional harmless error. Defendant cites *Griego*, which states that "when a trial court misinstructs the jury on an element of an offense, either by omitting or misdescribing that element," the error is of constitutional magnitude. 19 P.3d at 8. However, the trial court did not omit or misdescribe an element by failing to provide the jury with a definition of attempt; the jury was correctly instructed that an element of the offense was an "attempt to influence a public servant." *See People v. Norman*, 703 P.2d 1261, 1269 (Colo. 1985) (reciting the elements of the offense of attempt to influence a public servant). Instead, the issue is whether the court erred by not supplementing the correct ele-

mental instruction by defining attempt. Thus, the standard of review is nonconstitutional harmless error, and reversal is required only if the alleged error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116 (internal quotation marks omitted).

¶ 26 The attempt to influence a public servant statute provides:

> Any person who attempts to influence any public servant by means of deceit . . ., with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him [or her] . . ., commits a class 4 felony.

§ 18–8–306.

 ¶ 27 We disagree with defendant that section 18–8–306 incorporates the definition of criminal attempt from the criminal attempt statute, which defines "criminal attempt" as "engag[ing] in conduct constituting a substantial step toward the commission of [an] offense. A substantial step is any conduct . . . which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." § 18–2–101(1).[2]

¶ 28 Nothing in section 18–8–306 requires incorporation of the definition of criminal attempt contained in section 18–2–101 and defendant cites no authority for the proposition that the term "attempt" in section 18–8–306 should be defined by reference to the entirely separate criminal attempt statute.[3] Moreover, such a requirement would be illog-

---

2. Defendant cites *People v. Leonard*, 673 P.2d 37, 42 (Colo. 1983), for the proposition that "attempt" is not "readily understandable to a person of ordinary intelligence without some further explanation by the court." *Leonard* discusses the crime of criminal attempt in the context of ensuring that a guilty plea is voluntarily and understandingly made. *Id.* at 39, 42. *Leonard* thus does not address the issue here: whether the term "attempt" in the attempt to influence a public servant statute should be defined by reference to the criminal attempt statute.

3. Defendant cites *People v. Tucker*, 232 P.3d 194, 200–01 (Colo. App. 2009), for the proposition that this court has equated the attempt element of attempt to influence a public servant with the

definition of criminal attempt in section 18–2–101(1), C.R.S. 2015. *Tucker* addressed whether there was sufficient evidence to support the defendant's conviction for attempt to influence a public servant. Although *Tucker* cited section 18–2–101, it appeared to rely on the definition of attempt contained in that provision only for the purpose of rejecting the defendant's argument that his conduct was not an "attempt" to influence because it did not constitute a "substantial step." *Id.* at 201. Given this context, we do not read *Tucker* to require a trial court to instruct the jury on the definition of criminal attempt contained in section 18–2–101 whenever a defendant is charged with attempt to influence a public servant.

ical as applied to the offense of attempt to influence a public servant because section 18–8–306 does not proscribe influencing a public servant, it proscribes *attempting* to influence a public servant.

¶ 29 There is no criminal offense in Colorado law of "influencing a public servant." It thus would be incorrect to define the term "attempt" in the attempt to influence a public servant statute as "engag[ing] in conduct constituting a substantial step toward the commission of the offense" of influencing a public servant. *See* § 18–2–101(1). If the term "attempt" in section 18–8–306 were to be defined by reference to section 18–2–101, the term would have to be defined as "engag[ing] in conduct constituting a substantial step toward the commission of the offense" of attempt to influence a public servant. *See* §§ 18–2–101(1), 18–8–306. This construction makes no sense and "[a] statutory interpretation leading to an illogical or absurd result will not be followed." *Frazier v. People,* 90 P.3d 807, 811 (Colo. 2004).

¶ 30 Accordingly, the trial court did not err in declining to instruct the jury on the definition of attempt.

### B. "Official Proceeding"

¶ 31 The trial court instructed the jury on the elements of tampering with physical evidence, which included the element that defendant, "believing that an official proceeding was pending, ... knowingly made or presented or offered any false or altered physical evidence, with intent that it be introduced in the pending or prospective official proceeding." Defendant now argues that the trial court erred in failing to instruct the jury on the definition of "official proceeding."

¶ 32 Because defendant did not preserve this argument, we review for plain error. *Hagos,* ¶ 14. "Plain error addresses error that is both obvious and substantial." *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005) (internal quotation marks omitted). Under the plain error standard, reversal is required only if the error "so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (internal quota-

tion marks omitted). An error in jury instructions constitutes plain error if it affected a substantial right and the record reveals a reasonable possibility that it contributed to the conviction. *Id.* "[A]n erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt." *Id.*

¶ 33 The tampering with physical evidence statute provides, in relevant part, that a person commits the offense "if, believing that an official proceeding is pending or about to be instituted, and acting without legal right or authority, he ... [k]nowingly makes, presents, or offers any false or altered physical evidence with intent that it be introduced in the pending or prospective official proceeding." § 18–8–610(1)(b). "Official proceeding" is defined in section 18–8–501(3), C.R.S. 2015, as "a proceeding heard before any ... judicial ... agency, or official authorized to hear evidence under oath." Section 18–8–601, C.R.S. 2015, provides that the definitions contained in section 18–8–501 are applicable to section 18–8–610.

¶ 34 Defendant argues that because the term "official proceeding" is defined by statute, the trial court erred in failing to provide the jury with the definition from section 18–8–501. But even were we to conclude that the court's failure to define "official proceeding" was error, it was not plain error.

¶ 35 Defendant has not explained why the fact that he was charged with the crimes of assault and harassment is not sufficient to establish that his conduct related to a pending or prospective official proceeding, as that term is defined by section 18–8–501. Also, nothing in the record indicates that, had the jury been instructed on the statutory definition of "official proceeding," it would have concluded that the elements of tampering with physical evidence were not met. Whether defendant's conduct related to a pending or prospective official proceeding was not a contested issue at trial. Rather, the parties disputed defendant's intent—whether he altered the receipt and provided it to his attorney with the intent that it be shown to the prosecutor and potentially be introduced into evidence at an official proceeding.

¶ 36 Defendant thus has not established a reasonable possibility that the court's failure to give the jury the statutory definition of "official proceeding" contributed to his conviction for tampering with physical evidence and, accordingly, even if the court erred in failing to give the jury such an instruction, the error does not require reversal. *See Miller*, 113 P.3d at 750.

## IV. Allowing the Jury Unfettered Access to an Audio Recording During Deliberations Was Not Reversible Error

■■■ ¶ 37 About a week before trial, the prosecutor conducted a recorded interview with defendant's ex-wife. During the interview, defendant's ex-wife stated that she had spoken with defendant on the phone the day before and he had said that as long as she would lie on the stand and testify that he did not attack her, everything would be fine and there would be no repercussions for her. She also told the prosecutor that defendant had repeatedly threatened her. In response to the prosecutor's question about what defendant had told her regarding submitting false documents, she stated that he had said that his goal was to show that it was impossible for him to have been in Colorado when the assault and harassment allegedly occurred, but that he accidentally put the wrong dates on the documents.

¶ 38 When defendant's ex-wife testified at trial, however, she denied everything she had initially told the police about the attack and all the statements she had made during the recorded interview with the prosecutor.[4] She testified that she had lied during the interview because she was intimidated by the prosecutor and that he had told her before the interview that if she did not say what he wanted her to say, which was what she had told the police, she would be held in contempt and put in jail indefinitely.

¶ 39 The trial court permitted the prosecutor to introduce, over defense counsel's objection, defendant's ex-wife's statements from the audio recording of the interview as prior inconsistent statements. The recording was played for the jury during her testimony.

¶ 40 After the jury retired to deliberate and in response to a question from the court about the recording, the prosecutor stated that arrangements had been made for it to be available for the jury. In response, defense counsel requested that the jury be denied access to the recording because "that would be unduly emphasizing one aspect of the evidence, and it [was his] understanding from the case law that that should be a basis for not allowing the jury to have unlimited access to playing that recording." The court denied defense counsel's request, stating that "that's an inaccurate statement of the case law, and the jury is entitled to have the tape with them to play it as they see fit. It is evidence, and they can examine any of the evidence as they see appropriate in deliberating and arriving at their verdict."

■■■■ ¶ 41 We agree with defendant that the trial court abused its discretion in allowing the jury unfettered access to the audio recording without first evaluating whether doing so would unfairly prejudice defendant. "[T]rial courts have an obligation . . . to assure that juries are not permitted to use exhibits in a manner that is unfairly prejudicial to a party." *DeBella v. People*, 233 P.3d 664, 666 (Colo. 2010) (internal quotation marks omitted). "[T]he trial court's ultimate objective must be to assess whether the exhibit will aid the jury in its proper consideration of the case, and even if so, whether a party will nevertheless be unfairly prejudiced by the jury's use of it." *Id.* at 668 (internal quotation marks omitted).

■■■ ¶ 42 Although control over the jury's use of exhibits remains within the discretion of the trial court, a court's failure to exercise its discretion as a result of its erroneous construction of controlling precedent is an abuse of discretion. *Id.* at 667. Here, as in *DeBella*, "the trial court's failure to assess

---

4. Defendant's ex-wife testified that she had repeatedly hit herself in the face with a can of bug spray to make it look like she had been punched and then she falsely told the police that defendant had hit her. According to her trial testimony, she lied about defendant attacking her because she "wanted to screw his whole life up" after discovering that he was with his girlfriend when defendant and his ex-wife were still married.

the potential for undue prejudice with respect to the jury's access to the [recording] was a failure to exercise its discretion, and so an abuse of discretion." *Id.* at 668.

¶ 43 However, not all abuses of discretion warrant reversal. *Id.* at 667. Under the harmless error standard, reversal is required only if the erroneous ruling substantially influenced the verdict or affected the fairness of the trial. *Id.* "[I]f the influence of the error on the trial is apparent, or if one is left in grave doubt as to its effect on the verdict or the fairness of the trial proceedings, the conviction cannot stand." *Id.* (internal quotation marks omitted).

¶ 44 We conclude that the trial court's failure to exercise its discretion with respect to the jury's access to the recording was harmless. Unlike the type of statements at issue when convictions have been reversed because of similar errors—recorded statements of child victims of sexual assault—the statements by defendant's ex-wife were not of a comparable inflammatory nature that would have aroused the passion or sympathy of the jurors each time they listened to the recording. *See id.* at 668; *People v. Jefferson*, 2014 COA 77M, ¶¶ 17–18, — P.3d — (*cert. granted* Dec. 22, 2014). Moreover, unlike *DeBella* and *Jefferson*, defendant's ex-wife's statement that defendant had told her that he accidentally put the wrong dates on the receipt was not "the linchpin of the prosecution's case against [defendant]." *DeBella*, 233 P.3d at 669; *see also Jefferson*, ¶¶ 28–29, — P.3d —.

¶ 45 In *DeBella*, 233 P.3d at 668–69, the video recording of the victim's interview was the only complete recounting of the sexual assaults and "the inconsistencies of the tape's content with [the victim's] trial testimony were central to the resolution of the case." Similarly, in *Jefferson*, ¶¶ 18, 28, — P.3d —, there were no eyewitnesses to the sexual assaults and no corroborating physical evidence, and the video recording of the victim's interview provided the only complete and detailed account of the incidents. In contrast, in this case, there was substantial evidence of guilt aside from defendant's ex-wife's statements, not the least of which was defendant's own testimony that he had al-

tered the receipt. Other evidence of guilt included defendant's former attorney's testimony about defendant giving him the receipt and testimony by the original prosecutor in the assault and harassment case about receiving the document from defendant's attorney in an attempt to obtain a dismissal of the charges.

¶ 46 Therefore, the trial court's failure to exercise its discretion before allowing the jury unfettered access to the recording did not substantially influence the verdict or affect the fairness of the trial such that reversal of defendant's convictions is required. *See DeBella*, 233 P.3d at 667.

## V. Conclusion

¶ 47 Defendant's conviction for second degree forgery is reversed, and the case is remanded for a new trial on that charge. Defendant's convictions for attempt to influence a public servant and tampering with physical evidence are affirmed.

JUDGE HAWTHORNE concurs.

JUDGE TAUBMAN concurs in part and dissents in part.

JUDGE TAUBMAN concurring in part and dissenting in part.

¶ 48 I agree with most of the majority's opinion, but instead of reversing Riley's conviction for second degree forgery, I would remand the case to the trial court with directions to enter a judgment of acquittal on that charge.

¶ 49 The division's opinion reversed Riley's conviction for second degree forgery and remanded the case for a new trial on that count. In doing so, the division held, "The jury's finding that the elements of felony forgery were met precludes a finding that the elements of second degree forgery were met because if the written instrument at issue was the kind described in section 18–5–102 (felony forgery), it necessarily could not also be 'of a kind not described in section 18–5–102.'" Thus, under the unique circumstances presented here, the jury concluded, as a matter of law, that Riley did not commit second degree forgery.

¶ 50 Therefore, I would conclude that double jeopardy principles preclude his being retried for second degree forgery. I recognize that in some cases where a constructive amendment has been found, the appropriate remedy is to reverse a defendant's conviction and remand for a new trial. *See, e.g., People v. Weeks*, 2015 COA 77, ¶¶ 52–53, 369 P.3d 699. Even if the evidence presented at Riley's trial "unquestionably supported the original charge" against him, the jury concluded as a matter of law that Riley did not commit second degree forgery.

¶ 51 Under these circumstances, I would follow the opinion of the division in *People in Interest of H.W., III*, 226 P.3d 1134, 1137–40 (Colo. App. 2009), and direct the trial court to enter a judgment of acquittal on the second degree forgery charge. In *H.W., III*, the division held that where the prosecution "proved an offense it did not charge [and] charged an offense it did not prove," the appropriate remedy was not to reverse and remand for a new trial, but to remand to the trial court with directions to enter a judgment of acquittal. *Id.* at 1140. In my view, such is the case here. Accordingly, I conclude that directing the trial court to enter a judgment of acquittal on the second degree forgery charge is the appropriate remedy.